Nash, C. J.
 

 Thomas Brown died in 1855, leaving a last will and testament, which has been duly admitted to probate. By the first clause he devises to his son Nathan Brown all his lands, of every kind and description, but directs they shall be valued, and he shall take them at that valuation. By the second clause he directs that all his personal property shall be sold, or divided among all the rest of his children, but directs that if the valuation put on the land, should not make it equal to the shares of the other children, then the deficiency shall be made up to Nathan out of the other property. At the time of the death of the testator, a crop was growing on the land, and in the valuation, which has been made, no notice was taken of the growing crop. Nathan insists that it ought not to be taken into the valuation, the other legatees contending that it ought. The error on the part of Nathan Brown, no doubt, springs from the well-known rule, that a devisee of land is entitled to the crop which is growing on it at the time of the testator’s death. As a general proposition, this is true; but not always so. There is no cloubt, that in this case, the growing crop does belong to the devisee Nathan. The execu- or of Thomas Brown has no right to intermeddle with it; nor
 
 *300
 
 ‘Lave the other children any claim to it; but that is not the question here. Our enquiry is, whether the crop, growing on the 'land, is to be taken into consideration in estimating its value, and we are decidedly of opinion that it is. While growing and unsevered from the land, it was a part of it, as much so as a house, or any permanent improvement which might have been upon it at the time of the testator’s death. If this were not so, that perfect equality in the disposition of the property 'disposed of by the will, would be effectually destroyed, for the son, Nathan, would have more than any one of the other legatees by precisely the value of the crop. The testator., with a view to this equality, 'converts the whole -of the property, he then had, into one joint fund. The crop was as much his property as the land on which it grew, and he divides the whole. In estimating the value of the land, the ■crop upon it, at the time of the testator’s death, must be taken into the estimate.
 

 The case presents 'another question, upon whidh the opinion of the Court is required. By some of the legatees, it is insisted, that in the division of the estate, as directed by the will, the several legatees must account for their-several advancements. It appears by the report of the cleric and master that all the legatees had been advanced by the testator during bis life-time, and there is great inequality in the sums advanced. It is insisted that a perfect equality among those who would be entitled to bis estate -after his death, was the -desire and intention of the testator,¡manifested, throughout his will, and apparent upon its face. Our only legitimate power is confined to a proper-constructional the will, and in arriving ,at this construction, we are here confined to the will itself. Whatever may have been in the view of the testator as to the ■equality among his children, there tis nothing in the will itself to show us that it wasdntended to extend to the advancements previously made, and without such intention so appearing, we ■•cannot extend it to them; if we did, we should, in that particular, be making the will of the testator, instead of expound•..ing it. .It must be declared that, in the discharge of tbe sev
 
 *301
 
 eral legacies, the advancements are not to be taken into consideration.
 

 By the 6th clause of the will, the testator directs that all my property be sold except the land, which is to be valued to my son Nathan, or divided in such way as to make all my children equal; to wit, Nathan, Martha Rice’s children, James, Mary, and Sarah — share and share alike. The testator here speaks of his children as if all were alive, though the will shows that James Brown was dead, and that the testator knew it. lie lias not left us in any doubt as to the manner in which the fund was to be distributed. The legatees were to take as classes; the children of Martha Rice to take the share their mother would have taken if she were alive; and so of the children of James Brown who is dead.
 

 In the 2nd item of the will, the testator gives to the
 
 children
 
 of Martha Rice the share which their mother would have received, that is one equal fifth part of the fund. Among the children of Martha Rice, the testator numbers Martha Arnold, a grand-danghter of Martha Rice. Under' the name of children of Martha Rice, Martha Arnold would have taken nothing, but the testator has thought proper to make
 
 her,pro hac vice,
 
 one of the children of Martha Rice, giving her an equal share with the children of Martha Rice, of the portion ho had given to the children of her grand-mother.
 

 Nathan Brown is to receive so much of the fund directed to be sold or divided as will make his share equal to that of each of the other classes; the children of Martha Rice, including her grand-daughter Martha Arnold, one equal fourth part of that fund after taking from it a sum sufficient to equalize Nathan’s share, with that of the other legatees; James Brown’s children one fourth part; Mary Massey and her husband Nathan Massey, and Sarah Whitsett and her husband, will receive one equal fourth part of that fund. There must be a reference to the clerk to take an account of the fund, and to ascertain the portions, or sums to which each legatee is entitled, and to take an account of the administration of the estate.
 

 Per Curiam, Decree accordingly.